# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **RICARDO MCDONALD, et al.,** | ) | **CASE NO. 1:04 CV 569** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **SIMON PROPERTY GROUP,** | ) | |
| | ) | |
| **Defendant.** | ) | **MEMORANDUM OPINION** |

This matter is before the Court on Defendant's Motion for Summary Judgment (Document #63). Pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant, Simon Property Group. L.P., has petitioned the Court for summary judgment on Plaintiffs' Complaint. For the reasons set forth below. Defendant's Motion for Summary Judgment is GRANTED

## FACTS

On February 20, 2004. Plaintiffs. Ricardo and Stephanie McDonald, filed their Complaint against Defendant in the Cuyahoga County Court of Common Pleas. Case No. CV 04 522777, seeking compensation for injuries allegedly sustained "due to the dangerous and defective condition of a piece of equipment owned and maintained by Defendant." Plaintiff. Ricardo

McDonald was employed as the maintenance supervisor for Southeast Services Corporation ("SSC") (referred to in the Complaint as "Service Solutions Company") and was injured while using a ladder during the course of his employment. The case was removed to this Court on March 23, 2004.

On July 1, 1997, Defendant entered into a Lease Agreement with SSC for certain space at the Richmond Town Square Mall.[1] (Plaintiffs' Brief in Opposition, Docket #75, at p.1.) The Lease covered certain space within Richmond Mall. (Defendant's Motion for Summary Judgment, Docket #63, at p. 2.) SSC and Defendant also entered into a Maintenance Agreement. (Docket #75, at p. 1.)

The Lease Agreement states in pertinent part as follows:

> Section 11.    Maintenance by Tenant.
>
> Landlord shall not be obligated to make repairs of any kind upon the premises nor any equipment, facilities or fixtures therein contained, which shall at all times be kept in good order, condition and repair by Tenant and in a clean, sanitary and safe condition.
>
> Section 17.    Indemnification.
>
> Tenant shall indemnify and save harmless Landlord from and against any and all liability, liens, claims, demands, damages, expenses, fees, costs, fines, penalties, suits, proceedings, action and causes of action of any and every kind and nature arising or growing out of or in any way connected with Tenant's use, occupancy, management or control of the premises or Tenant's operations, conduct or activities in the Shopping Center.

The Maintenance Agreement states in pertinent part as follows:

---

[1]

Defendant, Simon Property Group, L.P., is the successor in interest to all rights, duties and obligations of Simon DeBartolo Group, L.P., which is referenced as the Landlord in the Lease Agreement.

       1.     Scope of the Work.  Contractor shall furnish all expertise,
                personnel. supervision, labor, supplies, materials and equipment to
                perform the maintenance and housekeeping services and work
                listed on Addendum A . . .

*(See* Lease Agreement. Docket #63, Exhibit 1; Maintenance Agreement. Docket #74. Exhibit 1.)

     Plaintiffs contend that because Defendant owned the ladder from which Mr. McDonald

fell resulting in his injuries. Defendant is liable.  Defendant filed its Motion for Summary

Judgment on September 28. 2006.  (Docket #63.)  In its Motion. Defendant argues that it was

SSC's duty to keep the maintenance equipment at issue in good order. condition and repair, and,

that because Mr. McDonald was employed by SSC as maintenance supervisor at the time of his

injury. it was his job to keep the equipment in good order. condition and repair.  *(Id.* at p. 1.)

Defendant relies upon the language of Section 11, page 3 of the Lease Agreement, entitled

"Maintenance by Tenant." as set forth above, as well as Section 17. page 5 of the Lease

Agreement. entitled "Indemnification." both of which are set forth above.  Defendant asserts that

"SSC, as tenant. had the sole and exclusive duty to maintain. in good safe condition, not only the

leased areas but also the maintenance equipment contained within the leased areas."  (Docket

#63. at p. 3.)

     On November 13. 2006, Plaintiffs filed their Brief in Opposition to Defendant's Motion

for Summary Judgment.  (Docket #75.)  Plaintiffs argue that Defendant owned the ladder; and.

that the Lease Agreement between Defendant and SSC has nothing to do with Mr. McDonald's

employment with SSC or his obligations to perform maintenance and housekeeping service.  *(Id.*

at p. 2-4.)  Plaintiffs argue that the Lease Agreement is inapplicable because there is "no

evidence or sworn documentation to establish that SSC ever did pursue the business of providing

property management services," as referred to in the Lease Agreement *(Id.* at p. 2.) Plaintiffs refer to the Maintenance Agreement section titled "Scope of Work," as quoted above, asserting that the Maintenance Agreement defines the relationship between SSC and its employees, and Defendant.

On November 17, 2006, Defendant filed its Reply Brief. (Docket #77.) Defendant discusses that the Maintenance Agreement requires SSC to furnish all equipment used to perform maintenance and housekeeping services and that the Lease Agreement provides that the responsibility with respect to keeping the maintenance equipment was that of SSC, Plaintiff's employer. *(Id.* at p.2.) Plaintiffs opposed Defendant's Reply Brief, arguing that Defendant waited several months to file its dispositive motion, even though it was in possession of the Lease Agreement throughout the litigation and several months after leave was granted to file a second dispositive motion.[2] Plaintiffs argue that Defendant "wants to change strategy," and argue that the Maintenance Agreement controls and disregard the Lease Agreement. *(Id.)* Plaintiffs argue that the ladder is not one of the items which SSC was to maintain because it is not listed on the Addendum to the Maintenance Agreement.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

---

[2]

Defendant's first Motion for Summary Judgment was denied because the question of fact remained as to which entity owned the ladder.

> [A] party seeking summary judgment always bears the initial responsibility of
> informing the district court of the basis for its motion, and identifying those portions
> of the pleadings, depositions, answers to interrogatories, and admissions on file,
> together with affidavits, if any, which it believes demonstrates the absence of a
> genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material"

only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires

consideration of the applicable evidentiary standards. The court will view the summary

judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial

does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d

937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of

a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57

F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence

presented is "merely colorable" and not "significantly probative," the court may decide the legal

issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted).

Once the moving party has satisfied its burden of proof, the burden then shifts to the

nonmoving party. The nonmoving party may not simply rely on its pleadings, but must "produce

evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't*

*of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## DISCUSSION

As set forth above, under the terms of the Lease Agreement, Defendant was not obligated to make repairs to any equipment on the leased premises, and SSC agreed to indemnify Defendant relative to any claims, damages, and causes of action in any way connected with SSC's use, occupancy, management, or control of the premises.[3]  Plaintiffs argue that the Lease Agreement between Defendant and SSC has nothing to do with Mr. McDonald's employment with SSC or his obligations to perform maintenance and housekeeping service, and that only the Maintenance Agreement should apply. Further, Plaintiffs assert that because the ladder was not one of the items listed in the Addendum to the Maintenance Agreement, SSC had no duty to

---

[3]
There is no evidence to suggest that claims made by employees of SSC were intended to be excluded from the indemnification provision of the Lease Agreement.

-7-

maintain its condition.

After a careful reading of both Agreements, the Court finds that both apply to relieve Defendant of liability. As a primary matter, this Court finds no support for the assertion that the Lease Agreement is somehow ineffective because, as alleged by SSC, SSC did not actually provide property management services at Richmond Town Square Mall. Section 8 of the Lease Agreement provides that the "the premises shall be occupied and used by Tenant solely for the purpose of conducting therein the business of providing property management services, and for no other use or purpose." The Court finds this to be a condition imposed by Defendant's in exchange for the agreement to lease the space. The condition limits SSC's activities in the leased space, prohibiting the Tenant from undertaking any other sort of business in the leased space. There is no evidence before the Court that SSC did not lease or occupy the space. SSC's reliance on this condition, in what appears to be an effort to attack the Lease Agreement, is misplaced.

There is no evidence before the Court that the Lease Agreement between SSC and Defendant was rescinded, terminated or rendered void for any reason at the time Mr. McDonald was injured. The Lease Agreement memorializes Defendant's intent to lease to SSC, for certain rents, space at the Richmond Mall. There is no evidence to suggest that SSC has not rented the premises from Defendant according to the terms of the Lease Agreement.

The Lease Agreement provides that Defendant "shall not be obligated to make repairs of any kind upon . . . any equipment . . . therein contained, which shall at all times be kept in good order, condition and repair by Tenant and in a . . . safe condition." Therefore, SSC, not Defendant, had the duty to keep any equipment on the premises in good order, condition and repair. SSC states in its Brief in Opposition that "there were some supplies and equipment in the

-8-

Mall owned and maintained by Movant and some equipment and supplies were brought to said place by SSC so as to pursue its obligations under the [Maintenance] Agreement." The ladder is one of the items that Plaintiffs claim was owned and maintained by Defendants. However, there is nothing to relieve SSC of the duty to maintain the equipment, regardless of ownership.[4]

Further, were this Court to exclude consideration of the Lease Agreement, which it does not, and find that the Maintenance Agreement governs the responsibilities and liabilities of SSC and Defendant. Defendant is still entitled to summary judgment. The Maintenance Agreement reads, "Contractor shall furnish all expertise, personnel, supervision, labor, supplies, materials and equipment to perform the maintenance and housekeeping services and work listed on Addendum A." Addendum A lists the maintenance and housekeeping services SSC is to perform and does not in any way exempt SSC from supplying the necessary equipment to complete those services, nor does it relieve SSC of the duty to keep the maintenance equipment in good working order. Further, by the express language of the Maintenance Agreement. SSC and Defendant contemplated that SSC would provide its own supplies and equipment. There is no language to the effect that Defendant is required to provide any supplies or equipment, nor is there any language that Defendant was required to maintain or monitor the equipment used by SSC, regardless of ownership.[5]

---

[4]

Plaintiffs cite the Affidavit of John Donovan, General Counsel and Vice President of SSC. Paragraph 10. which reads, "there is nothing in the lease that has any affect on employees of SSC performing duties in pursuance of the maintenance and housekeeping agreement." The Court finds this argument to be misplaced. The Lease Agreement specifically provides that SSC, not Defendant, was to keep the equipment on the premises in good order, condition and repair. Therefore, it was SSC's duty to maintain the condition of the ladder, regardless of who was using the ladder or why it was being used.

[5]

SSC's argument that it was not required to maintain the condition of the ladder because the ladder was not listed in the Addendum to the Maintenance Agreement is misplaced. First. Addendum C to the Maintenance Agreement lists inventory, tools and equipment which were purchased by SSC from Defendant as part of the Maintenance Agreement.

## CONCLUSION

For the foregoing reasons. Defendant's Motion for Summary Judgment (Document #63)

is GRANTED.

IT IS SO ORDERED.

_Donald C. Nugent_
DONALD C. NUGENT
United States District Judge

DATED: __November 21, 2006__

---

Addendum C is not a list of the only items that SSC must maintain in good working
condition.  Second, Addendum A sets forth numerous maintenance and housekeeping
duties and there is nothing to suggest that the listed items in Addendum C were the sole
items SSC was to use in performing its duties.  Thus, the mere fact that the ladder was not
specifically referenced in the Maintenance Agreement is immaterial.